UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

AVANI RESOURCES PTE, LTD.,

    Plaintiff,

v.                                          CIVIL ACTION NO. 2:24-cv-00604

ADAM WILSON and
ROBIN FRYER,

    Defendants.

### MEMORANDUM OPINION AND ORDER

Pending are Motions to Dismiss Plaintiff's First Amended Complaint by Defendants Adam Wilson and Robin Fryer [ECF 23, 25], filed March 7, 2025. Plaintiff Avani Resources Pte, Ltd. ("Avani") responded in opposition to both Motions [ECF 37], to which Defendants replied. [ECF 38, 39]. Avani was given leave to file a surreply, which was filed on April 22, 2025. [ECF 45]. The matter is ready for adjudication.

I.

Avani is a private limited company organized under the laws of Singapore that engages in the purchase, sale, and financing of coal-related assets. [ECF 18 ¶¶ 1, 8]. Non-party Ben's Creek Group, PLC ("BCG") is a company organized under the laws of England and Wales. [*Id.* ¶ 2]. BCG operates in the United States through three Delaware subsidiaries -- Ben's Creek Operations WV, LC ("BCO"), Ben's Creek Land, LLC ("BCL"), and Ben's Creek Carbon, LLC ("BCC") (collectively, the "BCG subsidiaries"). [*Id.* ¶¶ 1–2]. These entities conduct coal mining operations in Mingo County, West Virginia. [*Id.* ¶ 2].

Defendant Adam Wilson is a citizen of Florida who served as BCG's Chief Executive Officer and managed the operations of the BCG subsidiaries during the relevant period. [*Id.* at ¶ 2]. According to the Amended Complaint, Mr. Wilson conducted BCG business from an office and apartment in Charleston, West Virginia, and oversaw its mining operations "throughout the Southern District of West Virginia." [*Id.* ¶ 2]. Defendant Robin Fryer, a citizen of Connecticut, served as BCG's non-executive Chairman and chaired its board of directors. [*Id.* ¶ 3]. Mr. Fryer also sat on the audit and remuneration committees and provided separate financial consulting services to BCG. [*Id.* ¶¶ 3, 11].

Mr. Wilson solicited Avani's investment in BCG's West Virginia mining operations. [*Id.* ¶ 9]. Avani acquired a 29.9% ownership stake in BCG and invested "tens of millions of dollars" based on Mr. Wilson's representations. [*Id.* ¶¶ 8–9]. Following the initial investment, Mr. Wilson continued to engage Avani in discussions regarding coal sales and additional capital contributions. [*Id.* ¶ 13]. Avani claims Mr. Wilson misrepresented the financial condition and operational capabilities of the BCG subsidiaries, concealing, among other things, regulatory issues, environmental violations, and financial distress. [*Id.* ¶ 16]. These misrepresentations allegedly led Avani to make further investments and loans to BCG. [*Id.* ¶ 46].

Specifically, Mr. Wilson pressured Avani to provide additional funding to purchase a second high wall miner shortly after the initial investment. [*Id.* ¶ 23]. Avani alleges Mr. Wilson falsely portrayed the equipment as essential to increasing production and profitability, despite knowing it would not materially benefit operations. [*Id.* ¶¶ 24–25]. Avani contends this acquisition was used to inflate BCG's stock price and attract further investment. [*Id.* ¶ 30]. At the same time, BCG allegedly faced significant operational setbacks related to a refuse cell failure and wash plant inefficiencies -- information that Mr. Wilson purportedly withheld from Avani. [*Id.* ¶ 28].

Avani also claims that Mr. Wilson entered into unauthorized coal sales contracts without the necessary approval of BCG's Board of Directors, which included an executive of Avani. [*Id.* ¶ 47]. Mr. Fryer is alleged to have improperly approved these contracts, which Avani insists were on unfavorable terms. [*Id.* ¶ 48]. As a result, Avani claims it was misled regarding BCG's financial health and ability to fulfill its contractual obligations. [*Id.* ¶¶ 50, 54]. These transactions allegedly led to overselling coal, conflicting delivery obligations, and additional investment losses. [*Id.* ¶ 56].

In addition, Mr. Wilson is alleged to have delayed the hiring of a Chief Financial Officer for over nine months and instead engaged Mr. Fryer as a financial consultant, without disclosing the arrangement to Avani. [*Id.* ¶¶ 61, 63]. During this period, Mr. Wilson and Mr. Fryer are both alleged to have sought to secure substantial bonuses for themselves and others. [*Id.* ¶ 69]. Finally, Avani alleges Mr. Wilson diverted company time and resources to a separate coal venture, Freeland Anthracite, without Avani's knowledge or approval. [*Id.* ¶ 74]. It claims Mr. Wilson solicited investors for this project, sometimes during events funded by BCG, and that Mr. Fryer continued to support Mr. Wilson despite concerns over these alleged diversions. [*Id.* ¶¶ 81, 85].

On October 24, 2024, Avani instituted this action. [ECF 1]. It claimed breach of fiduciary duty (Count I), fraudulent misrepresentation (Count II), unjust enrichment (Count III), civil conspiracy (Count IV), and aiding and abetting (Count V). [*Id.* at 19–23]. On January 21, 2025, Defendants individually moved to dismiss the Complaint, arguing the claims implicate the internal affairs of a United Kingdom ("U.K.") corporation and are governed by U.K. law. [ECF 14, 15]. In response, Avani filed an Amended Complaint recharacterizing its fiduciary duty claim as one for negligence and adding allegations regarding Defendants' ties to West Virginia. [ECF 18].

On March 7, 2025, Defendants again individually moved to dismiss the Amended Complaint under the doctrine of *forum non conveniens* or, alternatively, *Federal Rule of Civil Procedure* 12(b)(6). [ECF 23, 25].

## II.

### A. Governing Standard

Rule 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions." *Twombly*, 550 U.S. at 555. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *McCleary-Evans*, 780 F.3d at 585; *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 122, 141 S. Ct. 1376 (2021); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012)) (internal quotation marks omitted). Stated another way, the operative pleading

4

need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Robertson*, 679 F.3d at 288.

The decision in *Iqbal* provides some additional markers concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief . . . .'"
>
> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678–79 (citations omitted).

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 94 (citing *Twombly*, 550 U.S. at 555–56); *see also S.C. Dep't of*

*Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (citing *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

**B.　　Forum Non Conveniens**

The doctrine of *forum non conveniens* provides a "district court . . . may dispose of an action . . . when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 5449 U.S. 422, 437 (2007). "In the typical case not involving a forum-selection clause, a district court considering . . . a *forum non conveniens* motion . . . must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. Of Texas*, 571 U.S. 49, 62 (2013). As recognized by our Court of Appeals, "[t]he Supreme Court has established a three-part framework for *forum non conveniens* in which the moving party must show that an 'alternative forum is: 1) available; 2) adequate; and 3) more convenient in light of the public and private interests involved.'" *dmarcian, Inc. v. dmarcian Europe BV*, 60 F.4th 119, 136 (4th Cir. 2023) (quoting *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011)). Additionally, a plaintiff's choice of forum is generally entitled to great "deference when the plaintiff chooses her home forum." *DiFederico v. Marriott Intern., Inc.*, 714 F.3d 796, 802–803 (4th Cir. 2013) (internal quotations and citations omitted). "Courts considering a motion to dismiss under *forum non conveniens* against a citizen plaintiff choosing her home forum must apply this increased deference in their analysis." *Id.* at 803.

"If the alternative forum is both available and adequate, the district court must [then] weigh the public and private interest factors." *Tang*, 656 F.3d at 249. The public interest

factors include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.*

The private interest factors include: (1) the relative ease of access to sources of proof, (2) the availability of compulsory process to obtain the testimony of unwilling witnesses, (3) the cost of obtaining testimony from willing witnesses, (4) the possibility of viewing the premises, and (5) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* "While these factors guide the analysis of a motion to dismiss under *forum non conveniens*, the 'ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice.'" *DiFederico*, 714 F.3d at 804 (internal citations omitted).

### III.

*A.    Availability*

An alternative forum is "available" if defendants are "amenable to process" in the other jurisdiction. *AdvanFort Co. v. Zamil Offshore Servs. Co.*, 134 F.4th 760, 769 (4th Cir. 2025); *dmarcian, Inc.*, 60 F.4th at 136. "[I]mportantly, 'the alternate forum must be available as to all defendants'—that is, all parties must come under the jurisdiction of the foreign forum." *AdvanFort Co.*, 134 F.4th at 769 (quoting *Galustian v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010)). In other words, this threshold requirement is met where the plaintiff is not barred by a statute of limitations and defendants agree to submit to the jurisdiction of the forum. *See Tang*, 656 F.3d at 250.

Defendants have expressly agreed to submit to the jurisdiction of U.K. courts and

do not contest service of process. [ECF 23, Ex. A ¶ 20; ECF 25, Ex. 8 ¶ 10]. There is no suggestion Avani would be unable to pursue its claims there or that service of process would be contested. Avani further does not dispute the U.K.'s availability as a forum. [ECF 37 at 5 n.4]. Accordingly, the availability prong is satisfied.

**B.     *Adequacy***

An alternative forum is "adequate" if: (1) the defendants are subject to its jurisdiction, and (2) it offers a remedy that is not "so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981); *see also Tang*, 656 F.3d at 249–50; *Galustian*, 591 F.3d at 731. The adequacy analysis does not require the alternative forum to recognize identical causes of action or afford precisely the same remedies. *See Tang*, 656 F.3d at 250–51; *Precision Weather Sols. Inc. v. Farmers Edge Inc.*, No. 22-1070, 2023 WL 2158368, at *3 (4th Cir. Feb. 22, 2023) (citing *Piper*, 454 U.S. at 255).

Avani concedes the U.K. provides some remedy. [ECF 37 at 5 n.4]. Although English law may not recognize direct claims for unjust enrichment against Defendants, this does not render the forum inadequate. As our Court of Appeals has concluded, "[a]n inadequate forum based on substantive law arises where the alternative forum does not permit litigation of the subject matter of the dispute." *Piper*, 454 U.S. at 254 n.22. Inasmuch as Avani may reformulate its claims in a manner recognized by English courts, U.K. courts can provide meaningful relief. The adequacy prong is satisfied.

**C.     *Plaintiff's Choice of Forum***

Before engaging with the analysis of the private and public interest factors, the Court must ascertain the proper level of deference to a plaintiff's choice of forum. *AdvanFort Co.*,

134 F.4th at 772; *DiFederico*, 714 F.3d at 802.

"As a general rule, a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate." *Trs. of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (internal quotations omitted). This is especially true where the plaintiff's choice of forum is their "home forum." *DiFederico*, 714 F.3d at 802–03 (citing *Piper*, 454 U.S. at 255). Conversely, a foreign plaintiff's choice is given diminished deference. *Piper*, 454 U.S. at 256. However, this diminished deference is muted "when the defendant is a resident and citizen of the forum he seeks to have declared inconvenient." *Galustian*, 591 F.3d at 732.

Our Court of Appeals has further recognized the necessity of factoring both the place of injury and business activity. *See generally AdvanFort Co.*, 134 F.4th at 773 ("[W]here an American corporation engaged in extensive foreign business brings an action for injury occurring in a foreign country, many courts have partially discounted the plaintiff's United States citizenship." (cleaned up)). Ultimately, "[a] defendant seeking dismissal against a non-citizen plaintiff must make a showing that the 'relevant public and private interests *strongly favor* a specific, adequate, and available alternative forum.'" *DiFederico*, 714 F.3d at 802 (quoting *Tang*, 656 F.3d at 246) (emphasis added)).

Avani is a Singaporean company, invoking the jurisdiction of a federal court in West Virginia to pursue claims against United States citizens. Although Avani is a foreign corporation, it elected to conduct business within the United States and allegedly incurred an injury from Defendants' actions which took place in West Virginia. Moreover, although Defendants do not reside in West Virginia, they are United States citizens. Their eagerness to move this litigation overseas undermines the fundamental factor of convenience. *See Galustian*, 591 F.3d at 732. Thus,

9

Avani's choice of forum is only partially discounted.

D.  **_Public and Private Interest Factors_**

### 1. Private Interest Factors

The private interest factors include the (1) relative ease of access to sources of proof, (2) availability of compulsory process for unwilling witnesses and costs of obtaining attendance of willing witnesses, (3) possibility of a view of the premises, if relevant, and (4) other practical concerns impacting trial efficiency and cost. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Piper*, 454 U.S. at 241 n.6.

The gravamen of the dispute concerns statements and actions by officers and directors of a U.K.-based company, with alleged misrepresentations concerning on-the-ground operations of a West Virginia mine. These alleged misrepresentations were all made in West Virginia, where Mr. Wilson temporarily resided and where the mine is located.

Avani contends "witnesses and evidence related to [Fryer and Wilson's] conduct are in or near West Virginia." [ECF 37 at 7]. Specifically, Avani lists as relevant witnesses and documents: (1) the mine's employees, (2) purchasers and vendors of the unauthorized coal transactions, (3) West Virginia mine and environmental inspectors, (4) Ben's Creek mine companies' records, and (5) Chris Walker, Mr. Wilson's successor as manager of the mine. [*Id.*]. Defendants conversely argue the non-party witnesses with the most knowledge of BCG and its subsidiaries' financial distress and corporate governance are the board of directors and auditors located in the U.K. [ECF 24 at 6–7; ECF 26 at 11].

While certain documents -- including board meeting minutes, audit committee records, and communications and executive compensation -- are maintained in the U.K. and may be relevant to Avani's claims, they do not play a central role in the alleged misconduct. Such

evidence relates to a limited portion of the material claims and does not outweigh the concentration of essential non-party witnesses and documents located in West Virginia. The heart of Avani's action relates to Mr. Wilson and Mr. Fryer's alleged misconduct perpetrated in the United States and does not allege BCG or the BCG subsidiaries engaged in any wrongdoing.

In the event non-party witnesses located in the U.K. become essential to resolving the matter, they are indeed beyond the reach of the Court's compulsory process. However, the opposite would hold true for the non-party witnesses located in West Virginia if the action were transferred. Simply put, relocating the action to the U.K. would merely shift the problem rather than resolve it. Moreover, Avani's allegations directly pertain to representations made concerning the operational and financial condition of the West Virginia mine. Meaningful access to the premises for purposes such as inspection or witness interviews would be impracticable, if not impossible, were the action to proceed overseas. Accordingly, the relevant private interest factors do not strongly favor a specific, adequate, and available alternative forum.

### 2. Public Interest Factors

The public interest factors include: (1) the administrative difficulties from court congestion, (2) the local interest in resolving localized disputes, (3) the interest in having cases tried in a forum familiar with the governing law, (4) avoiding unnecessary conflict-of-law problems, and (5) avoiding unfair jury duty for citizens of an unrelated forum. *Piper*, 454 U.S. at 241 n.6; *Tang*, 656 F.3d at 249.

The first factor -- court congestion -- weighs in favor of West Virginia inasmuch as the docket is not significantly burdened. Next, the crux of Avani's action centers on the alleged misrepresentations made by Defendants concerning BCG's mining operation in West Virginia. The U.K. has minimal local interest in a case concerning alleged torts stemming from the

11

operations of a mine located in Mingo County.

As to the third and fourth factors, Defendants contend U.K. law governs the dispute under the internal affairs doctrine. [ECF 24 at 9–11; ECF 26 at 12–13]. Avani responds the doctrine is inapplicable given the matter concerns the specific alleged misconduct of Defendants as individuals irrespective of their corporate status. [ECF 37 at 13].

"While it is true 'the public interest factors point toward dismissal where the court would be required to untangle problems in conflict of laws and in law foreign to itself,' this fact alone is not sufficient to justify dismissal if a weighing of the relevant factors favors retention of jurisdiction." *Slight By & Through Slight v. E.I. DuPont De Nemours & Co.*, 979 F. Supp. 433, 441 (S.D. W. Va. 1997) (quoting *Piper*, 454 U.S. at 251) (cleaned up); *see also DiFederico*, 714 F.3d at 808 ("While applying foreign law might pose a burden, it is not enough to push the balance strongly in favor of [dismissal] in the overall inquiry.").

The internal affairs doctrine requires a court to apply the law of the state of incorporation except in instances where another state has a more significant relationship. *F.D.I.C. v. Baldini*, 983 F. Supp. 2d 772, 777 (S.D. W. Va. 2013); Restatement (Second) of Conflict of Laws § 309 (1971). It applies to acts which "closely affect the organic structure or internal administration of the corporation." Restatement (Second) of Conflict of Laws § 309 cmt. c. Alternatively, issues relating to the commission of a tort "can practically be decided differently in different states." *Id.*

This case is not one that closely affects the organic structure or internal administration of BCG or the BCG subsidiaries. Rather, it concerns the alleged individual misconduct of former directors/officers, which centers around a mine in West Virginia. In any event, West Virginia yet has a more significant relationship to the alleged misconduct than the

U.K. as earlier discussed. Thus, this factor weighs in favor of retention.

Finally, it would be unfair to burden U.K. citizens with jury duty concerning an action involving foreign parties whose actions took place in West Virginia. Accordingly, the public interest factors do not strongly favor a specific, adequate, and available alternative forum. The Motions to Dismiss [**ECF 23, 25**] are **DENIED** pertaining to *forum non conveniens*.

### IV.

Defendants also challenge the sufficiency of Avani's claims. Specifically, Defendants contend Avani fails to state a claim for negligence, and Mr. Fryer separately asserts that Avani's remaining claims are likewise deficient.

*A.*     *Negligence (Count I)*

Defendants move to dismiss Avani's negligence claim. They contend Avani mischaracterizes its breach of fiduciary duty claim as negligence, which must be dismissed under U.K. law. [ECF 24 at 12–14; ECF 26 at 15–18]. Alternatively, Mr. Wilson argues if U.K. law does not apply then the law of Singapore applies according to the doctrine of *lex loci delicti*. [ECF 24 at 15–16]. Mr. Fryer further contends even if West Virginia law applies, he did not have any relationship with Avani other than being the director of a company in which Avani held shares. [ECF 26 at 18–19].

Our Court of Appeals has held the "proper choice-of-law analysis in West Virginia varies depending on how a claim is characterized, e.g., as a tort claim or as a contract claim." *Kenney v. Indep. Ord. of Foresters*, 744 F.3d 901, 905 (4th Cir. 2014). Choice of law in tort cases -- like this one -- is governed by the rule of *lex loci delicti*. *Id.*

Under *lex loci delicti*, the Court must apply the "law of the place of the wrong." *Id.*

13

at 908. "Although conduct that causes harm can occur in one state and the resulting injury to a plaintiff can occur in another state, 'the substantive rights between the parties are determined by the law of the place of injury.'" *Id.* (citing *West Virginia ex rel. Chemtall Inc. v. Madden*, 216 W.Va. 443, 451, 607 S.E.2d 772, 780 (2004)). "The place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place." Restatement (First) of Conflict of Laws § 377 (1934). "When a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made." *Id.* § 377 n.4. Given Avani is a Singaporean corporation, its loss was sustained in Singapore. The law of Singapore would apply according to the rigid application of *lex loci delicti*.

Deviations from this rigid approach are tolerated where necessary "'to resolve particularly thorny conflicts problems.'" *Kenney*, 744 F.3d at 907 (quoting *Oakes v. Oxygen Therapy Servs.*, 178 W.Va. 543, 544 363 S.E.2d 130, 131–32 (1987)). In such instances, a court utilizes the standards set forth in the *Restatement (Second) of Conflict of Laws*, which focuses on the state with "the most significant relationship to the occurrence and the parties." Restatement (Second) of Conflict of Laws § 145(1); *see Pierson v. Kuba*, No. 1:22CV7, 2023 WL 5353693, at *3 (N.D. W. Va. Aug. 21, 2023); *Hannah v. Mullins Fam. Funeral Home LLC*, No. 2:20-CV-00617, 2021 WL 4343950, at *3 (S.D. W. Va. Sept. 23, 2021). In determining what state has the most significant relationship to the matter, a court is to consider the following contacts: "(a) the place where the injury occurred, (b) the place where the conduct causing injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (d) the place where the relationship, if any, between the parties, is centered." Restatement (Second) of Conflict of Laws § 145(2).

First, Avani's injury occurred in Singapore inasmuch as the impact of the

Defendants' misconduct was there sustained. Second, each Count pertains to Mr. Wilson's fraudulent misrepresentations respecting a West Virginia coal mine. Third, Avani is domiciled in Singapore but "invests in various coal-related businesses around the world, including in southern West Virginia." [ECF 18 ¶ 1]. Mr. Wilson is a Florida resident and a U.K. citizen. [ECF 18 ¶; ECF 24 at 4 n.1]. He conducted business both from his office and the apartment he maintained in West Virginia during the relevant time period. [ECF 18 ¶ 2]. Mr. Fryer is a resident of Connecticut. [*Id.* ¶ 3]. Lastly, the relationship between Avani and the Defendants centers around the investment and operation of the coal mining operation in West Virginia. Thus, their relationship is centered in West Virginia, where the coal mine at issue is located and where the conduct causing the alleged injury occurred. Inasmuch as West Virginia has the most significant relationship to the parties and the Defendants' alleged wrongs, West Virginia law applies pursuant to the Second Restatement approach.

To establish negligence under West Virginia law, a plaintiff must prove four elements: duty, breach, causation, and damages. *Orso v. City of Logan*, 249 W. Va. 602, 607, 900 S.E.2d 28, 33 (2024). "'In order to recover in an action based on negligence[,] the plaintiff must prove that the defendant was guilty of negligence and that such negligence was the proximate cause of the injury of which the plaintiff complains.'" *Id.* (quoting Syl. Pt. 1, *Matthews v. Cumberland & Allegheny Gas Co.*, 138 W. Va. 639, 639, 77 S.E.2d 180, 182 (1953)). A cause of action for ordinary negligence is predicated on unintentional conduct. *Smith v. Lusk*, 533 F. App'x 280, 284 (4th Cir. 2013); *Johnson v. Westlake Flooring Co.*, LLC, 744 F. Supp. 3d 622, 626 (E.D. Va. 2024); *Doe v. Cabell Cnty. Bd. of Educ.*, No. CV 3:21-0031, 2022 WL 568344, at *3 (S.D. W. Va. Feb. 24, 2022) (dismissing plaintiff's negligence claim inasmuch as the alleged actions gave rise to an intentional tort); *Boyd v. Goffoli*, 216 W. Va. 552, 565, 608 S.E.2d 169, 182 (2004)

15

("[B]ecause the jury found that Appellant committed fraud, the harm suffered by Appellees was the result of intentional conduct and not mere negligence.").

Respecting Defendants' negligence, Avani has offered multiple allegations in support as follows:

> 90. Defendant Wilson undertook legal duties through the creation of a special relationship with Avani beyond a typical investment relationship. *See Glascock v. City Nat. Bank of West Virginia*, 213 W.Va. 61 (2002).
>
> 91. This relationship arose by way of the nature of the parties' relationships and Wilson's solicitations, promises, and representations to Avani regarding the impact of certain investments on the broader operations and Avani's needs. Accordingly, he took on and owed legal duties to act in the interest and for the benefit of Avani.
>
> 92. Based on the knowledge available to Wilson, which was misrepresented or withheld from Avani, he would have reasonably foreseen the unique risk of harm to Avani.
>
> 93. Ultimately, Defendant Wilson's repeated misrepresentations, material omissions, fraudulent business dealings and transactions, diversion of work, and apparent self-dealing, along with the supportive efforts or acquiescence of Defendant Fryer, all breached those duties to Avani.
>
> 94. These breaches violated the special relationship duties Defendant Wilson undertook through his commitments and representations to Avani beyond those to mere typical investors.
>
> 95. Similarly, as the primary financial officer and consultant overseeing the [BCG subsidiaries] and close confidant of Wilson, Defendant Fryer took on and owed duties to act in the interest of and for the benefit of Avani through its investments in the West Virginia operations. Further, Fryer had a special relationship triggering these duties owed to Avani. That relationship and corresponding duties, arose at minimum from Fryer's acquiescence to Wilson's misrepresentations and the reasonably foreseeable risk of unique harm in light of his intimate knowledge of the misconduct and financials at play.
>
> 96. Indeed, despite this knowledge, in addition to the other tortious conduct alleged herein and his acquiescence to Wilson's conduct, Fryer repeatedly endeavored to induce even further investment from Avani.
>
> 97. Defendants misled Avani, misappropriated its investments and resources it committed to [BCG], and fraudulently secured additional capital investment from Avani in breach of their duties.

> 98. Defendants misconduct departed from the fundamental standards of good faith and fair dealing that were inherent in their duties to Avani.
>
> 99. As a direct and proximate result of Defendants' breaches of their duties, Avani has suffered substantial financial harm, extensive litigation, and other harms to both reputation and operations.
>
> 100. These duties arose separate and in addition to any fiduciary obligations imposed by the organizing documents and structure of [BCG], or purely contractual duties owed.

[ECF 18 ¶¶ 90–100].

The entirety of Avani's Amended Complaint is predicated upon Defendants' alleged intentional, fraudulent misconduct in the operation of BCG. Avani claims "Defendants misled Avani, misappropriated its investments and resources it committed to [BCG], and fraudulently secured additional capital investment from Avani in breach of their duties." [*Id.* ¶ 97]. Further, Avani's negligence claim mirrors its accompanying claims of fraudulent misrepresentation, unjust enrichment, civil conspiracy, and aiding and abetting. *See Young v. F.D.I.C.*, 103 F.3d 1180, 1190 (4th Cir. 1997) ("Civil conspiracy and fraudulent misrepresentation are intentional torts."). The negligence claim is not properly viewed as a claim pled in the alternative, as authorized by the *Federal Rules of Civil Procedure*. It is, instead, a purely duplicative intentional tort claim. The Motions to Dismiss [**ECF 23, 25**] are **GRANTED** to the extent that Count I against Defendants is **DISMISSED WITHOUT PREJUDICE**.

B.　*Unjust Enrichment (Count III)*

Mr. Fryer moves to dismiss Plaintiff's unjust enrichment claim inasmuch as -- under U.K. law -- such claim can only be brought by the company. [ECF 26 at 19]. Avani contends the Court should reject Mr. Fryer's argument inasmuch as U.K. law does not apply here. [ECF 37 at 19]. The Court agrees. The Motion to Dismiss [**ECF 25**] is **DENIED** respecting

Avani's unjust enrichment claim.

### C.   *Fraudulent Misrepresentation, Civil Conspiracy, and Aiding and Abetting (Counts II, IV, and V)*

Mr. Fryer moves to dismiss Counts II,[1] IV, and V for failing to plead facts with particularity as required under Rule 9(b). [ECF 26 at 20].

Rule 9(b) provides, *inter alia*, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* The heightened pleading standard of Rule 9(b) applies to allegations that sound in fraud. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Rule 9(b) has four primary purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of. Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Id.* (cleaned up). To satisfy Rule 9(b)'s heightened pleading standard, plaintiffs must allege with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (cleaned up). In contrast, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those

---

[1] Inasmuch as Avani contends it does not intend to assert fraudulent misrepresentation against Mr. Fryer, [ECF 37 at 19], the Motion to Dismiss [**ECF 25**] is **GRANTED** to the extent that Count II against Mr. Fryer is **DISMISSED**.

facts." *Id.*

Avani alleges civil conspiracy (Count IV) and aiding and abetting (Count V) against Defendants. Apart from the specific count of fraudulent misrepresentation, the "gravamen of [Counts IV and V] . . . is fraud, triggering Rule 9(b)." *Moore v. RoundPoint Mortgage Serv. Corp.*, No 2:18-cv-01222, 2018 WL 4964362, at *3 (S.D. W. Va. Oct. 15, 2018). Thus, the heightened pleading standard applies.

Avani's Amended Complaint alleges: (1) the time of the alleged misconduct was from on or around June 2021 to April 2024, when Mr. Wilson served as CEO to BCG and Mr. Fryer served as Independent Chairman of the Board, member of the audit and renumeration committee, and financial consultant for BCG and its entities, (2) Avani invested in BCG and its West Virginia coal mining operations, (3) the false representation consisted of the representation from Mr. Wilson that, including but not limited to, the coal mining operation had a positive posture in operations, production capacity, and financial outlook, (4) Mr. Fryer had intimate knowledge of the financial dealings of BCG, (5) Mr. Fryer provided substantial assistance in furthering Mr. Wilson's false representations by approving unreasonable bonus payments, approving unfavorable and unauthorized contracts for the sale of millions of dollars' worth of coal, resisting efforts to expedite the hiring of a CFO so he could serve as the financial consultant of the West Virginia operations despite having a conflict of interest, and failing to properly account for the financial issues raised by an independent audit, and (6) as a result, Avani agreed to invest tens of millions of dollars. [ECF 18 at 5–18].

These allegations are sufficient to satisfy the heightened pleading standard. *See McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559–60 (4th Cir. 2013). Accordingly, the Motion to Dismiss [**ECF 25**] is **DENIED** regarding Avani's claims for civil conspiracy (Count IV)

and aiding and abetting (Count V).

V.

Based on the foregoing discussion, the Court **ORDERS** as follows respecting the Defendants' Motions to Dismiss:

1. Defendant Wilson's Motion to Dismiss [**ECF 23**] is **GRANTED IN PART** and Count I is **DISMISSED**;

2. Defendant Fryer's Motion to Dismiss [**ECF 25**] is **GRANTED IN PART** and Counts I and II are **DISMISSED**;

3. The Motions to Dismiss [**ECF 23, 25**] are **DENIED** respecting their residues.

On April 21, 2025, the Court stayed this matter pending resolution of the motions to dismiss. [ECF 43]. The Court **LIFTS** the stay and **REINSTATES** this matter to the active docket. An amended scheduling order is forthcoming.

The Clerk is directed to send a copy of this written opinion and order to counsel of record and to any unrepresented party.

ENTER: November 25, 2025

Frank W. Volk
Chief United States District Judge