UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

AVANI RESOURCES PTE, LTD.,

    Plaintiff,

v.                                                   CIVIL ACTION NO. 2:24-cv-00604

ADAM WILSON and
ROBIN FRYER,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant Robin Fryer's Motion to Stay Proceedings Due to Severe and Ongoing Medical Impairments [ECF 51], filed December 8, 2025. Plaintiff Avani Resources, Pte, Ltd. ("Avani") responded in opposition on December 9, 2025, [ECF 53], to which Mr. Fryer replied on December 11, 2025. [ECF 56]. The matter is ready for adjudication.

**I.**

The Court previously recited the facts and posture in its November 25, 2025, memorandum opinion and order. The following is a brief summary. [*See* ECF 48].

Avani is a private limited company organized under the laws of Singapore that engages in the purchase, sale, and financing of coal-related assets. [ECF 18 ¶¶ 1, 8]. Non-party Ben's Creek Group, PLC ("BCG") is a company organized under the laws of England and Wales that operates in the United States through three subsidiaries -- Ben's Creek Operations WV, LC ("BCO"), Ben's Creek Land, LLC ("BCL"), and Ben's Creek Carbon, LLC ("BCC") (collectively, the "BCG subsidiaries"). [*Id.* ¶¶ 1–2]. Defendant Adam Wilson served as BCG's Chief Executive

Officer and managed the operations of the BCG subsidiaries during the relevant period. [*Id.* ¶ 2]. Defendant Robin Fryer served as non-executive Chairman of BCG, chaired its board of directors, sat on the audit and remuneration committees, and provided separate financial consulting services to BCG. [*Id.* ¶¶ 3, 11].

Avani alleges claims for breach of fiduciary duty (Count I), fraudulent misrepresentation (Count II), unjust enrichment (Count III), civil conspiracy (Count IV), and aiding and abetting (Count V) against both Defendants. [*See* ECF 18 at 19–23]. Mr. Wilson and Mr. Fryer sought to dismiss based upon (1) *forum non conveniens* or (2) *Federal Rule of Civil Procedure* 12(b)(6). [*See* ECF 23; ECF 25]. On April 21, 2025, the Court stayed this matter pending resolution of the motions to dismiss. [ECF 43]. On November 25, 2025, the Court entered its memorandum opinion and order (1) denying dismissal based upon *forum non conveniens*, (2) dismissing Count I without prejudice as to both Defendants, (3) dismissing Count II as to Mr. Fryer, and (4) denying Mr. Fryer's motions to dismiss Counts III, IV, and V. [*See* ECF 48]. Additionally, the Court lifted the stay. [*See id.*]. On December 1, 2025, the Court entered an amended scheduling order. [*See* ECF 50].

Now, Mr. Fryer -- "a 78-year-old man suffering from highly aggressive prostate cancer and chronic Atrial Fibrillation ("Afib"), among other complications" -- seeks a 90- day stay of all deadlines, including the time to file an answer. [ECF 52 at 1].

## II.

A district court retains "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 335 n.8 (4th Cir. 2019) ("'[T]he power to stay proceedings is incidental to the power inherent in every court to control the

disposition of the causes on its docket[.]'" (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936))). Determining whether to stay a proceeding "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55. The applicant must "justify . . . [the relief sought] by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

Several factors guide the exercise of discretion: "(1): the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party," which are "drawn from the Supreme Court's decision in *Landis* [*v. North American Company*]." *White v. Ally Financial Inc.*, 969 F. Supp.2d 451, 462 (S.D. W. Va. 2013) (citing *Landis*, 299 U.S. at 255) (cleaned up).

**III.**

Mr. Fryer requests a 90-day stay, alleging his health conditions, treatments, and the side-effects prevent him from participating in his own defense. [ECF 51 at 1–4]. According to Mr. Fryer, the *Landis* factors weigh in favor of a stay.

Regarding the first factor, Mr. Fryer asserts a "stay will promote judicial economy by ensuring that proceedings move forward with a defendant who is physically and cognitively able to assist in narrowing issues, providing factual information, and participating in potential discussions about resolution of claims." [ECF 52 at 6].

Regarding the second factor, Mr. Fryer contends a stay is warranted inasmuch as he would experience "clear and substantial" hardship as a result of the case proceeding due to the combined side effects of his advanced prostate cancer, radiation and hormone therapy, and persistent atrial fibrillation. [ECF 51 at 4; *see* ECF 52 at 2]. Mr. Fryer asserts the side effects

3

stemming from his diagnoses include severe fatigue, limitations on mobility, urologic and gastrointestinal functional challenges, and impaired concentration, which collectively prevent him from "reviewing case materials, assisting with factual development, and conferring with counsel for the preparation of appropriate pleadings and defenses." [ECF 51 at 4; *see also* ECF 52 at 5].

Mr. Fryer further submitted a letter from his primary care physician summarizing his medical history and representing (1) his medical conditions "create practical limitations on his ability to travel, sit for extended periods, and participate in lengthy meetings or proceedings without interruption," (2) the course of hormone therapy he is undergoing "is expected to continue until mid-March 2026" but the "ultimate effectiveness will not be known until . . . later in 2026," (3) he has a heart ablation procedure scheduled for December 24, 2025, which will require follow-up visits in 2026, (4) his "limitations are likely to persist for at least the next 6 months or longer," and (5) "requiring Mr. Fryer at this time to participate intensively in litigation would be inconsistent with his medical condition and treatment needs and would likely exacerbate his symptoms." [ECF 56-1 at 1–2].

Regarding the third factor, Mr. Fryer asserts Avani will not experience undue prejudice as a result of a "modest and time-limited" 90-day stay because there "is no indication that evidence will be lost, witnesses will become unavailable, or that Plaintiff will suffer any concrete prejudice from such a temporary pause." [ECF 52 at 6]. Finally, Mr. Fryer urges that "[a]ny potential delay in the resolution of the case is outweighed by the need to preserve Mr. Fryer's ability to meaningfully participate in the litigation." [*Id.*].

Avani responds (1) the burden on Mr. Fryer at the current stage of the litigation is minimal inasmuch as "[n]o written discovery has been served[] and no depositions have been noticed," (2) "Mr. Fryer's stated limitations can be reasonably accommodated . . . by scheduling

adjustments, reasonable extensions, remote participation options, and [other] focused accommodations," (3) a stay would prejudice Avani and threaten its "ability to prosecute its case" because of "the risk[] of fading memories, unavailable witnesses, and lost or stale evidence" as a result of the lack of "timely access to information within Defendants' possession," (4) the case was previously stayed for seven months and has been pending for over a year, and (5) a 90-day stay would do "little to meaningfully alleviate Mr. Fryer's limitations" inasmuch as they "are not expected to resolve in the near future, if at all." [ECF 53 at 2–4].

In reply, Mr. Fryer argues (1) the burden of preparing an answer and participating meaningfully in fact development is not minimal inasmuch as it "demands detailed recollection, analysis of past events, and sustained cognitive effort, all of which Mr. Fryer is currently unable to provide," and (2) accommodations in the form of extensions and remote appearances would not accommodate his limitations inasmuch as they would not address his current cognitive impairment or his fatigue -- particularly because he "presently cannot reliably assist counsel, review documents, provide factual information, correct inaccuracies, or make considered decisions." [ECF 56 at 3–5].

First, judicial economy is served by ensuring the proceedings continue. As Avani indicates, the case has been pending for over a year, yet Mr. Fryer has "yet to file an Answer to the Amended Complaint, much less participate in any discovery." [ECF 53 at 3].

Second, Mr. Fryer has failed to establish "clear and convincing circumstances," *Williford*, 715 F.2d at 127, outweighing Avani's potential harm. Mr. Fryer submitted a letter from his primary care physician stating that his current participation "would likely exacerbate his symptoms." [ECF 56-1 at 2]. The Court notes there is very little detail to support that medical conclusion. While the possibility is concerning, the Court must nevertheless "weigh competing

interests and maintain an even balance." *Landis*, 299 U.S. at 254–55.

The Court is equally aware of the possibility that granting Mr. Fryer's requested relief would not alleviate the hardship presented by his participation. Indeed, Mr. Fryer's submissions indicate: (1) the results of the hormone therapy "will not be fully known until at least the second half of 2026," [ECF 51 at 2; *see also* ECF 56 at 6 (acknowledging that Mr. Fryer's primary care physician stated that "Mr. Fryer's limitations are likely to persist for 6 months or longer")], (2) "testosterone recovery can take years; accordingly, Mr. Fryer's fatigue is expected to continue beyond the end of treatment," [ECF 51 at 3], and (3) "[r]egular follow-up visits, requiring Mr. Fryer to travel from his home in Connecticut to the hospital in New York, will be required in 2026." [*Id.* at 4]. The foregoing representations indicate the requested 90 days is but an opening estimate rather than a "modest," one-time request. [ECF 52 at 6].

Finally, the balance of the third factor weighs in favor of Avani. If Mr. Fryer was regrettably to deteriorate during the requested period and become less able to participate than he is in his present condition, Avani's harm would be irreparable. Mr. Fryer is correct that it is necessary to "move forward with a defendant who is physically and cognitively able to assist in narrowing issues, providing factual information, and participating in potential discussions about resolution of claims." [ECF 52 at 6]. However, Avani has represented its intention to accommodate the limitations caused by Mr. Fryer's health conditions. [*See* ECF 53 at 3 ("Mr. Fryer's stated limitations can be reasonably accommodated . . . by scheduling adjustments, reasonable extensions, remote participation options, and [other] focused accommodations[.]")]. According to his doctor, Mr. Fryer currently experiences fatigue, limitations on mobility, urologic and gastrointestinal functional challenges, and impaired concentration, which are all "practical limitations on his ability to travel, sit for extended periods, and participate in lengthy meetings or

proceedings without interruption," [ECF 56-1 at 1–2], but the practical limitations are not an insurmountable hurdle. The Court has no reason to doubt Avani's stated intention to accommodate Mr. Fryer's limitations to the best of its ability. These expected accommodations alleviate any lingering concerns regarding Mr. Fryer's stated hardships. Despite the challenges facing Mr. Fryer, the Court cannot ignore the potential prejudice to Avani as a result of the possibility of fading memories, witnesses becoming unavailable, or evidence being lost. Accordingly, inasmuch as the balance of the *Landis* factors weigh against granting a temporary stay, Mr. Fryer's Motion to Stay Proceedings is **DENIED**. [**ECF 51**].[1]

### IV.

Based on the foregoing discussion, the Court **DENIES** the Motion to Stay Proceedings. [**ECF 51**].

The Clerk is directed to send a copy of this written opinion and order to counsel of record and to any unrepresented party.

ENTER: January 20, 2026



Frank W. Volk
Chief United States District Judge

---

[1] Pursuant to *Federal Rule of Civil Procedure* 12(a)(4)(A), "[u]nless the court sets a different time . . . if the court denies the motion . . . , the responsive pleading must be served within 14 days after notice of the court's action." Fed. R. Civ. P. R. 12(a)(4)(A). Inasmuch as the Court denied Mr. Fryer's motion to dismiss on November 25, 2025, [ECF 48], Mr. Fryer's answer should have been submitted by December 9, 2025. However, Mr. Fryer submitted the subject motion to stay before the answer deadline had passed, and good cause exists pursuant to Rule 6(b)(1) to extend the answer deadline to 14 days after today. The failure to file an answer within the time prescribed by the Rule will result in the entry of default and, ultimately, default judgment. The Court encourages Mr. Fryer to act seasonably.